IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                        |   |                          |
|------------------------|---|--------------------------|
|                        | * |                          |
| MARK HEPBURN,          |   |                          |
|                        | * |                          |
|     Plaintiff,         |   |                          |
| v.                     | * | CIVIL NO.: WDQ-05-CV-2568 |
|                        |   |                          |
| NATIONAL CENTER ON     | * |                          |
| INSTITUTIONS AND       |   |                          |
| ALTERNATIVES, INC., et al., | * |                     |
|                        |   |                          |
|     Defendants.        | * |                          |

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION AND ORDER

Mark Hepburn ("Mr. Hepburn") sued the National Center on
Institutions and Alternatives, Inc. ("NCIA") and NCIA/SAQ, LLC
("NCIA/SAQ) for due process violations of the Fourteenth
Amendment and Section 1983 of Title 42 of the United States
Code[1], as well as negligent care of the disabled under Maryland
law.[2] Pending are Defendants' motion to dismiss the Complaint, or
in the alternative, for summary judgment, and Plaintiff's motion
to consolidate.  For the following reasons Defendants' motion to
dismiss will be granted, and Plaintiff's motion to consolidate
will be denied.

---

[1] 42 U.S.C. § 1983 (2005).

[2] See Md. Code Ann., Health Gen. §§ 7-101, et seq. (2005);
Md. Code Regs. 10.22.01.01, et seq. (2005).

I. Background

Mr. Hepburn is a non-verbal, disabled 31 year old adult. Compl. at ¶ 1.  At the age of 15, Mr. Hepburn was injured in a motor vehicle accident, which caused him mental and developmental disabilities.  *Id*. at ¶ 6.  His mother, Deborah Hepburn ("Ms. Hepburn") was appointed guardian of Mr. Hepburn by the Circuit Court for Anne Arundel County in 1993.  *Id*. at ¶ 3.

In 1995, at the age of 21, Mr. Hepburn was placed in an NCIA residential facility for care and treatment.[3]  *Id*. at ¶ 8.  After one year of enrollment in NCIA's residential program, Athelas Institute ("Athelas") contracted to provide certain daytime care services for Mr. Hepburn.  *Id*. at ¶ 9.  Mr. Hepburn continued to reside at the NCIA facility, while also receiving care from Athelas.  *Id*. at ¶¶ 10-11, 16.

On September 29, 1999, Mr. Hepburn suffered injuries from a choking incident and required hospitalization.  *Id*. at ¶¶ 21-23. Ms. Hepburn alleges that his injuries were directly and proximately caused by Defendants' negligent care and supervision. *Id*. at ¶ 24.

On September 27, 2002, Mr. Hepburn and Ms. Hepburn sued

---

[3] The Complaint refers to an entity known as Community Based Alternatives Initiative ("CBAI") and refers to it as "NCIA/CBAI." Defendants state that CBAI was the name of NCIA's residential program while Mr. Hepburn was a client of NCIA, and NCIA and CBAI are the same entity. Mot. Dismiss at 1, fn1.  Consistent with Defendants' motion to dismiss, only NCIA will be referred to in this opinion.

NCIA, NCIA/SAQ, Athelas, and others in this Court ("*Hepburn I*"), and in the Maryland Health Claims Arbitration Office, alleging state law negligence and breach of contract claims, and violations of § 1983 and various provisions of the Code of Federal Regulations. *See Hepburn, et al. v. NCIA, et al.*, No. WDQ-02-cv-3179; Mot. Dismiss Ex. 3. On April 21, 2003, this Court dismissed the Hepburns' state law claims for failure to comply with the Maryland Health Care Malpractice Claims Act and dismissed all claims against NCIA. *See* Mot. Dismiss Ex. 1. The claims against NCIA were dismissed without prejudice for failure to effect service within the 120 days specified by Fed. R. Civ. P. 4(m) and Local Rule 103.8(a).

On June 6, 2003, NCIA/SAQ moved to dismiss the Hepburns' § 1983 claim and his claims based upon violations of various federal regulations. *See* Mot. Dismiss Ex. 2. On September 24, 2003, this Court granted NCIA/SAQ's motion to dismiss the federal regulatory claims, but denied the motion as to the Hepburns' § 1983 claim. *Id*.

On August 14, 2003, the Hepburns' motion to amend the complaint was denied. Mot. to Dismiss at 3-4; Ex. 3. On November 20, 2003, Athelas filed a third-party complaint against NCIA seeking indemnification from NCIA for the Hepburns' § 1983 action. *See* Mot. Dismiss Ex. 4. This Court granted NCIA's motion to dismiss Athelas' third-party complaint. *Id.*; 324 F.

Supp. 2d 752 (D. Md. 2004).

On February 11, 2004, the remaining parties in *Hepburn I* stipulated to the dismissal with prejudice of NCIA/SAQ from the case; this Court approved the dismissal. *See* Mot. Dismiss Ex. 5.

On September 15, 2005, Mr. Hepburn, by his mother, filed the instant action ("*Hepburn II*") against NCIA and NCIA/SAQ substantially repeating the claims raised in *Hepburn I*. Ms. Hepburn asserts breaches of the duty of care to the disabled and violations of Mr. Hepburn's due process rights, and seeks $50 million dollars in damages.


II.  Analysis

A.  Defendants' Motions to Dismiss

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et. al.*, 7 F.3d 1130, 1134 (4th Cir. 1993). All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents.

*Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)). The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.   *Id*.


1. NCIA/SAQ Dismissed

      Plaintiff does not oppose Defendants' motion to dismiss NCIA/SAQ, and therefore, consents to the dismissal of NCIA/SAQ from this action, because NCIA/SAQ had been voluntarily dismissed with prejudice from *Hepburn I*.  *See* Opp. Mot. at 3-4.  The Court will dismiss NCIA/SAQ with prejudice from this action.


2. Res Judicata Bars Hepburn's Action against NCIA

      The elements of res judicata, otherwise known as claim preclusion, are well settled in Maryland law.  The three requirements are: (1) the parties in the prior litigation and the subsequent litigation must be the same or in privity with each other; (2) the claims or causes of action in the subsequent litigation must be the same as those in the prior litigation; (3) the prior litigation resulted in a final judgment on the merits. *See U.S. v. Consumer Health Foundation*, 28 Fed. Appx. 178, 183-184 (4th Cir. 2001); *Kutzik v. Young*, 730 F.2d 149, 151 (4th Cir. 1984); *Church v. State of Maryland*, 180 F. Supp. 2d 708, 748 (D. Md. 2002); *Schwartz v. U.S.*, 745 F. Supp. 1132, 1133 (D. Md.

1990).  All the elements of res judicata are present in Hepburn's second action against NCIA; thus dismissal is warranted. *Schwartz*, 745 F. Supp. at 1134-1135.

Hepburn argues that his action is not barred by res judicata, because NCIA is not in privity with NCIA/SAQ.  Opp. Mot. at 4-6.  Hepburn contends that NCIA is not in privity with NCIA/SAQ, because of an affidavit filed in *Hepburn I* in which Herbert Hoelter ("Hoelter") affirmed that NCIA/SAQ was not involved with Mr. Hepburn's care. See Opp. Mot. Ex. 1.  However, that NCIA/SAQ was not involved with Mr. Hepburn's care does not negate privity between the two parties.

NCIA/SAQ is a subsidiary of NCIA.  *See* Mot. Dismiss at 8 and Ex. 6-7; Reply at 3; Opp. Mot. Ex. 1.  Hoelter is a co-founder and the chief executive officer of NCIA.  *Id*.  Hoelter signed NCIA/SAQ's Article of Reinstatement, along with Frank Vitale, the resident agent of NCIA/SAQ and chief operating officer of NCIA. *Id*.  The relationship between NCIA and NCIA/SAQ is that of parent and subsidiary, which is sufficient to establish privity between the parties.  *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 721 (D. Md. 2002), *aff'd*, 63 Fed. Appx. 175 (4th Cir. 2003).

The test for determining the identity of causes of actions is whether the same evidence supports both suits.  *Kutzik*, 730 F.2d at 151-152.  If so, the subsequent suit must be dismissed. *Schwartz*, 745 F. Supp. at 1135.  The facts raised in *Hepburn I*

are restated in this action; thus, Hepburn's claims are precluded.

Hepburn also argues that his claims against NCIA are not barred solely because NCIA/SAQ was dismissed with prejudice from *Hepburn I*. NCIA/SAQ's dismissal from *Hepburn I* serves as a final judgment barring Hepburn's claims against NCIA because the other elements of res judicata are present. *Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1987).

B.    Hepburn's Motion to Consolidate

Hepburn's motion to consolidate the instant action with *Hepburn I* will not cure the futility of his attempt to revive his extinguished claims. After NCIA was dismissed without prejudice from *Hepburn I*, the Hepburns moved to amend their complaint. This Court denied the motion to amend, which estops Mr. Hepburn from filing a new action adding the claims he was denied leave to amend. *Sensormatic Security Corp. v. Sensormatic Electronics Corp.*, 329 F. Supp. 2d 574, 579 (D. Md. 2004). Accordingly, his motion to consolidate will be denied.

CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss[4] will be granted, and Plaintiff's motion to consolidate will be denied.


January 18, 2006                          /s/

Date                              William D. Quarles, Jr.
                                  United States District Judge

_____

[4] Defendants argued that Mr. Hepburn's claims should be barred by the statute of limitations, because - although he is incompetent - he has a legal guardian.  Defendants ask this Court to ignore *Funk v. Wingert*, 134 Md. 523, 107 A. 345 (1919), in which the Court of Appeals held that a committee for an incompetent lacks legal title to the incompetent's property; therefore, the applicable statute of limitations does not begin to run until the incompetent's disability is removed.  *Id.* at 526, 346.  Defendants argue that because Mr. Hepburn's incompetence will never be removed, Defendants will be exposed to suit from Mr. Hepburn as long as he lives.
    The *Funk* case has been superseded by statute; under current law, a guardian for the property of an incompetent person holds title to the protected person's property.  *See Buxton v. Buxton*, 363 Md. 634, 647, 770 A. 2d 152, 159 (2001)(citing Md. Code Ann., Est. & Trusts § 13-206).  The court in *Buxton* declined to decide whether the appointment of a guardian lifts the tolling provisions of the statute of limitations.  *Id*.  The Court of Appeals has continued to cite the *Funk* case with approval.  *See Piselli v. 75th Street Medical*, 371 Md. 188, 214, 808 A.2d 508, 523 (2002)(citing *Funk* for the proposition that a suit brought by a guardian during the period of disability does not remove a case from the tolling provisions).  Therefore, this Court has declined to ignore the *Funk* case and exempt Mr. Hepburn from the protection of the tolling provisions of the statute of limitations.